DAVID B. FISHER *vs.* BRUCE LINT.[1]

No. 06-P-1208.

Worcester. March 20, 2007. - June 19, 2007.

Present: DUFFLY, DREBEN, & MEADE, JJ.

*"Anti-SLAPP" Statute. Judicial Immunity. Constitutional Law,* Privileges and immunities.

The judge in a civil action properly denied the defendant State police sergeant's special motion to dismiss under G. L. c. 231, § 59H, the "anti-SLAPP" statute, where the defendant's investigation of and report on the plaintiff State police trooper's misconduct, his statements to internal affairs regarding the plaintiff, and his testimony at the plaintiff's disciplinary hearing did not constitute petitioning activity within the meaning of that statute, as the defendant performed those activities in carrying out his responsibilities as a State police officer, rather than in seeking to redress wrongs done to him personally [362-365]; nevertheless, the judge erred in denying the defendant's motion to dismiss on the ground of absolute immunity, where the defendant's statements, which served as the basis of the plaintiff's complaint, occurred at a time when quasi judicial disciplinary proceedings could reasonably have been contemplated [365-370].

CIVIL ACTION commenced in the Superior Court Department on March 27, 2001.

A special motion to dismiss and a motion to dismiss were heard by *Ernest B. Murphy,* J.

*Thomas P. Campbell* for the defendant.

MEADE, J. Asserting that disciplinary action was taken against him in retaliation for whistleblowing, the plaintiff State trooper David B. Fisher brought a complaint alleging, as against the present defendant State police Sergeant Bruce Lint, counts of intentional interference with advantageous relations, civil conspiracy, defamation (slander), and violations of State (G. L. c. 12, §§ 11H and 11I) and Federal (42 U.S.C. § 1983 [2000]) civil rights laws.[2] Lint filed a special motion to dismiss under the

---

[1] In his individual capacity and as sergeant in the Department of State Police.

[2] The other original defendants are not part of this appeal.

"anti-SLAPP" statute, G. L. c. 231, § 59H, and also moved to dismiss on the basis of an absolute privilege. A Superior Court judge denied Lint's motion on both grounds, and Lint appeals.[3]

We hold that Lint's investigation and report on Fisher's conduct, Lint's statements to internal affairs, and Lint's testimony at an administrative disciplinary hearing do not constitute petitioning activity within the meaning of G. L. c. 231, § 59H. However, because Lint's statements, which serve as the basis of Fisher's complaint, occurred at a time when quasi judicial disciplinary proceedings could reasonably have been contemplated, Lint is entitled to the protection of an absolute privilege. Based on the latter determination, we reverse the denial of Lint's motion to dismiss.[4]

*Background.* Fisher was assigned to the State police barracks in Grafton from the spring of 1986 through September, 1998. In 1997, Fisher brought a number of complaints concerning improper behavior at the barracks, alleging that prisoners brought there were allowed to commit serious violations of the General Laws as well as Department of Correction rules and regulations.

On August 11, 1998, Fisher assisted a motorist on Route 495 and summoned a tow truck. Subsequently, a complaint was registered against him arising out of this motorist assistance incident. Lint was ordered to investigate. On August 20, 1998, Lint submitted a report in which he concluded that Fisher had engaged in misconduct in violation of certain State police rules. As a result of Lint's report, an internal affairs investigation was conducted. Fisher alleges that Lint made false statements to the internal affairs investigators.[5]

On September 1, 1998, evidently in relation to his earlier

---

[3]The denial of a special motion to dismiss under G. L. c. 231, § 59H, is immediately appealable under the doctrine of present execution, *Fabre* v. *Walton*, 436 Mass. 517, 521-522 (2002), and we have jurisdiction to decide ancillary issues along with it. See *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999). In addition, we assume without deciding that the denial of a pretrial motion predicated upon an absolute privilege, which provides immunity from suit, would also qualify under the doctrine of present execution.

[4]Given the result we reach, we decline to address Lint's additional arguments that his motion to dismiss should have been treated as one for summary judgment and that he was entitled to an absolute privilege provided to attorneys in the course of litigation.

[5]Beyond characterizing the statements as "false," the complaint does not

assertions of misconduct at the Grafton barracks, Fisher specifically complained that Lint, while supervising work-release prisoners, was involved with the prisoners in an improper and possibly illegal capacity. Fisher alleged that he was harassed thereafter, and on September 8, 1998, he was transferred to the Leominster barracks. On September 10, 1998, Fisher learned that he had been placed on midnight shifts and allegedly was told that he would continue on such shifts regardless of his seniority. After consulting a police union attorney, Fisher had his original shifts restored.

In 2001, the State police convened a disciplinary hearing against Fisher based on Lint's report and Lint's statements to internal affairs investigators. The disciplinary board cleared Fisher of four of the five charges, but found that he had engaged in unprofessional behavior unbecoming a State police officer. The board suspended Fisher for sixty days without pay. Subsequently, Fisher commenced the present action against Lint and others.

1. *The anti-SLAPP statute.* The Legislature has provided a means through which persons who have been made the subject of civil litigation in retaliation for the exercise of their right to petition the government may be spared the expense and the burden of defense of the action.

> "In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss."

G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1.

The statute defines the exercise of the right of petition as

> "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by

---

describe Lint's statements to the investigators or reveal their content.

a legislative, executive, or judicial body or any other governmental proceeding; . . . or any other statement falling within constitutional protection of the right to petition government."

*Ibid.* The anti-SLAPP statute was enacted to protect citizens from lawsuits designed to chill their right to petition the government for redress of grievances. See *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 161 (1998) (*Duracraft*); *Fabre* v. *Walton*, 436 Mass. 517, 520 (2002) (*Fabre*). The purpose of filing a SLAPP suit is not to prevail in the matter, but rather to use litigation to chill, intimidate, or punish citizens who have exercised their constitutional right to petition the government to redress a grievance. *Duracraft, supra* at 161-162; *Fabre, supra* at 520 n.6; *Wynne* v. *Creigle*, 63 Mass. App. Ct. 246, 252 (2005).

Lint, as the party filing the special motion to dismiss, had the initial burden of demonstrating that the activity at issue was "petitioning activity" within the purview of the anti-SLAPP statute and that Fisher's claims were " 'based on' [Lint's] petitioning activities alone and have no substantial basis other than or in addition to [his] petitioning activities." *Duracraft, supra* at 167-168. *Fabre, supra* at 522. If Lint had made this threshold showing, then the burden would have shifted to Fisher to show both that Lint's exercise of his right to petition was devoid of "any reasonable factual support or any arguable basis in law" and that the exercise of the right "caused actual injury to" Fisher. *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 599 (2000), quoting from G. L. c. 231, § 59H. Here, the motion judge determined that Lint failed to meet his initial burden that the activity in question was "petitioning activity." We review the judge's decision denying a special motion to dismiss for abuse of discretion or other error of law. *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 250 (2007). *Kalter* v. *Wood*, 67 Mass. App. Ct. 584, 586 (2006). There was neither.

Lint claims that his petitioning activity consisted of the following: his investigation of Fisher's conduct during the towing incident, which he reduced to a report; Lint's statements to internal affairs investigators regarding Fisher's misconduct and

in response to Fisher's allegation of Lint's misconduct[6]; and Lint's testimony at Fisher's disciplinary hearing. Whether Lint may seek the protection of G. L. c. 231, § 59H, depends on whether his conduct amounted to the exercise of his right to petition the government as that concept is understood in the context of our State and Federal Constitutions. *Kobrin* v. *Gastfriend*, 443 Mass. 327, 333 (2005) (*Kobrin*). See First Amendment to the United States Constitution ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances"); art. 19 of the Massachusetts Declaration of Rights ("The people have a right . . . to request of the legislative body . . . by the way of . . . petitions . . . redress of the wrongs done them, and of the grievances they suffer"). As we explain, we hold that it does not.

In *Kobrin*, *supra* at 332-335, the Supreme Judicial Court restricted the scope of activities covered by § 59H. Specifically, the court

> "read the phrase 'based on said party's exercise of its right of petition under the constitution' as restricting the statute's coverage to those defendants who petition the government on their own behalf. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens. It is not intended to apply to those performing services for the government as contractors."

*Id.* at 332. In *Kobrin*, this meant that a doctor who was a paid expert witness at an administrative hearing was not entitled to the protection of the anti-SLAPP statute because he "was not seeking from the government any form of redress for a grievance of his own or otherwise petitioning on his own behalf." *Id.* at 330. In fact, he "was acting solely on behalf of the board as an expert investigator and witness." *Id.* at 333.

As in *Kobrin*, Lint's conduct was not an attempt to redress a wrong he suffered, nor was he petitioning on his own behalf.

---

[6]Although Lint includes his statements made to internal affairs in defense of Fisher's allegations against him, we note that Fisher's complaint, i.e., the claimed SLAPP suit, is not "based on" those statements. See *Duracraft, supra* at 167. Thus, even if they constituted petitioning activity, they would fall outside the protection of G. L. c. 231, § 59H.

Rather, his superior officer ordered him to investigate Fisher's conduct during the towing incident. Thereafter, Lint made statements to internal affairs about the investigation and provided testimony regarding Fisher at his disciplinary hearing. In none of these instances was Lint "petitioning" as a citizen to redress a wrong that was done to him personally. Rather, he was carrying out his responsibilities as a State police officer. We can discern no reason to believe that the unavailability of immunity in these circumstances will have any chilling effect on actual petitioning activity in the future. See *Duracraft*, 427 Mass. at 161; *Fabre*, 436 Mass. at 520. Moreover, Lint is not assisted by his claim that his conduct was motivated in part by a personal interest because at this initial stage "the motive behind the petitioning activity is irrelevant." *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 122 (2002).[7] Because Lint failed to make the appropriate threshold showing, we need not address the remainder of his anti-SLAPP argument.

2. *Absolute privilege.* Lint also claims that his motion to dismiss should have been granted because his statements that form the basis of Fisher's claims against him are protected by an absolute privilege. When reviewing a denied motion to dismiss, we take the well-pleaded allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.*, 413 Mass. 583, 584 (1992). *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992). A complaint may properly be dismissed for failure to state a claim when it appears certain "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957).

Whether an absolute privilege applies is determined on a case-by-case basis, after a fact-specific analysis, with a proper

---

[7]Lint's reliance on *Baker* v. *Parsons*, 434 Mass. 543 (2001), to support his claim that his petitioning activity, solicited by the government, is also protected by § 59H, is misplaced. In *Baker*, prior to the solicitation of their comments by the government, the moving parties had engaged in petitioning activity of their own and sought to redress their own grievances. *Id.* at 544-546. *Kobrin*, *supra* at 338-340. Lint engaged in no petitioning activity on his own behalf.

consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation. *Correllas* v. *Viveiros*, 410 Mass. 314, 323 (1991) (*Correllas*). See *Sheppard* v. *Bryant*, 191 Mass. 591, 592-593 (1906). Mindful of these factors, we find that Lint is protected from suit by an absolute privilege.

Statements made in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith. *Seelig* v. *Harvard Coop. Soc.*, 355 Mass. 532, 538 (1969). *Correllas, supra* at 319. "An absolute privilege is favored because any final judgment may depend largely on the testimony of the party or witness, and full disclosure, in the interests of justice, should not be hampered by fear of an action for defamation. *Id.* at 320. See Restatement (Second) of Torts § 588 comment a (1977). "[I]t is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy." *Correllas, supra* at 320, quoting from *Aborn* v. *Lipson*, 357 Mass. 71, 72 (1970). The privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding. *Correllas, supra* at 320-321. See *Sriberg* v. *Raymond*, 370 Mass. 105, 108 (1976); *Hartford* v. *Hartford*, 60 Mass. App. Ct. 446, 451-452 (2004); Restatement (Second) of Torts § 588 comment e (1977).

With reference to these principles, the motion judge determined that because testimony at the trial board disciplinary proceedings was not entitled to the same protection as testimony "before a court of law," an absolute privilege did not apply. To buttress his conclusion, the judge added that the absence of the threat of perjury for witnesses testifying before the trial board further distinguished it from a contemplated judicial proceeding. We disagree.

To determine whether a proceeding is sufficiently judicial or quasi judicial in nature to apply an absolute privilege, we must examine the operation and mechanics of the proceeding itself. Here, the State police trial board is governed by G. L. c. 22C,

§ 13, as in effect prior to St. 2002, c. 43, the time relevant here, which stated:

> "Any uniformed member of the state police who has served for one year or more and against whom charges have been preferred shall be tried by a board to be appointed by the colonel or, at the request of the officer, may be tried by a board consisting of the colonel. Any person aggrieved by the finding of such trial board may within sixty days after being notified thereof, bring a petition in the district court within the judicial district of which he resides, or in the municipal court of the city of Boston addressed to the justice of the court asking that the action of the department trial board be reviewed by the court, and after such notice to the colonel as the court deems necessary, it shall review such finding and determine whether or not upon all the evidence such finding and punishment was justified."

As described below, Massachusetts State Police Rules and Regulations (1999) (rules) further delineate trial board procedures as well as provide certain rights and obligations to those affected by the proceedings. The availability of an absolute privilege to Lint depends on whether the procedural safeguards during the trial board proceedings adequately minimize the risk that defamation or other tortious conduct will occur. See *Butz* v. *Economou*, 438 U.S. 478, 512 (1978).[8]

Under the State police rules and regulations, a trial board hearing is "a formal administrative proceeding," § 6.7.1, which, as the Supreme Judicial Court has noted, "appears analogous to a military court martial board." *Burns* v. *Commonwealth*, 430 Mass. 444, 448 n.6 (1999). The trial board is comprised of three disinterested members of the State police,[9] appointed by the

---

[8]The decisions of other jurisdictions relative to the availability of an absolute privilege to witnesses in quasi judicial police disciplinary proceedings are in accord. See *Craig* v. *Stafford Constr., Inc.*, 271 Conn. 78, 88, (2004); *Hartlep* v. *Torres*, 324 Ill. App. 3d 817, 819-820 (2001); *Miner* v. *Novotny*, 304 Md. 164, 176-177 (1985); *Putter* v. *Anderson*, 601 S.W.2d 73, 76-77 (Tex. Civ. Ct. App. 1980). But see *Elder* v. *Holland*, 208 Va. 15, 21 (1967) (where procedural safeguards at police disciplinary hearing were inadequate, witness was entitled only to qualified privilege for his testimony).

[9]No member of the trial board may participate in a hearing involving a

superintendent,[10] and may include the superintendent as one of the three. G. L. c. 22C, § 13. Rules §§ 6.7.2 & 6.7.3. The accused officer is given notice of the charges, an opportunity to be heard, §§ 6.4.3, 6.4.6, & 6.5.1, and he has the right to counsel, § 6.7.6. The proceedings are adversarial and recorded. §§ 6.7.6 & 6.7.7. The accused officer has the right to present evidence, to call witnesses and to cross-examine the witnesses adverse to him. § 6.7.6. Witnesses appearing before the board must testify under oath or affirmation. *Ibid.*[11]

The board, by a majority vote and in writing, is required to summarize the evidence and make findings of fact. Rules § 6.7.7. Adjudications of "Guilty" or "Not Guilty" must be made as to each charge, and guilt must be determined by substantial evidence. *Ibid.* Where an adjudication of guilt as to one or more of the charges is made, the board shall recommend an appropriate discipline to the deputy superintendent. §§ 6.7.7 & 6.9.4.[12] If the accused officer is found not guilty, that finding is final and conclusive. §§ 6.7.7 & 6.9.6.

Upon receipt of the trial record, the deputy superintendent must review all summaries, findings, reports, and recommendations and make a written recommendation to the superintendent. Rules §§ 6.8.1 & 6.8.2. All recommendations of discipline must be approved by the superintendent in writing. § 6.9.5. If

member of his or her own troop, section, or unit, nor may a member participate in any other case where his or her impartiality might be questioned. Rules § 6.7.3.

[10]The superintendent holds the rank of colonel, and the deputy superintendent holds the rank of lieutenant colonel. Rules §§ 3.1 & 3.2.

[11]The motion judge erred by concluding that the threat of perjury is not present at a trial board hearing. Indeed, all witness testimony must be presented under oath or affirmation. Rules § 6.7.6. Under G. L. c. 268, § 1, one who wilfully swears or affirms falsely regarding a material issue in an adjudicatory proceeding, or one who wilfully swears or affirms falsely in a matter relative to which an oath or affirmation is required, is guilty of perjury. See *Commonwealth* v. *Daniels*, 399 Mass. 465, 468 (1987). See also *Jones* v. *Daniels*, 15 Gray 438, 440 (1860). Furthermore, in Lint's circumstances, even if he did not face the possibility of perjury, he nonetheless would have faced the possibility of criminal punishment if his report regarding Fisher's conduct was false. See G. L. c. 268, § 6A.

[12]Although the trial board is not bound by the strict rules of evidence, rule § 6.7.6, evidence of the accused's employment history may only be used after an adjudication of the charges for the purpose of recommending discipline. § 6.7.7.

the superintendent finds material error in the procedure, judgment, or disciplinary recommendation of a trial board, the superintendent may order a new trial board, dismiss one or more of the charges, or modify the recommended discipline. Rules § 6.9.6. If the superintendent imposes discipline that departs from the guidelines, the superintendent must set forth in writing the justification for that departure. § 6.9.7. At the relevant time of this case,[13] the accused had the right to have a District Court judge review the superintendent's decision for errors of law, see *Burns* v. *Commonwealth*, 430 Mass. at 449, and further review in the Superior Court or the Supreme Judicial Court was possible by writ of certiorari pursuant to G. L. c. 249, § 4. *Id.* at 449 n.9.

In short, the State police trial board possesses the authority and provides the procedural protections that differentiates a quasi judicial board from one that merely performs an administrative function. The safeguards built into the hearing process serve to reduce the need for tort actions to control injurious statements or testimony. See *Butz* v. *Economou*, 438 U.S. at 512. The procedural due process protections featured at trial board hearings, including the right to counsel, the right to present evidence, the right to cross-examine adverse witnesses, and the threat of perjury, also serve to enhance the reliability of the evidence to be assessed by impartial decision-makers. See *ibid.* In light of these safeguards, the motion judge erred in his determination regarding the quasi judicial nature of the proceeding.

Drawing the reasonable inferences in Fisher's favor, we are left with the allegation that Lint's statements in his report and to internal affairs resulted in the disciplinary proceedings and the harm to Fisher. Because the absolute privilege would protect not only Lint's testimony at the quasi judicial trial board but also his statements that were made preliminary to the proceeding, Lint was entitled to the immunity the privilege provides.[14]

---

[13]Effective May 13, 2002, G. L. c. 22C, § 13, was amended by St. 2002, c. 43, to provide that any person aggrieved by the finding of a trial board may appeal pursuant to G. L. c. 31, §§ 41 to 45, rather than by means of a petition filed in the District Court.

[14]In opposition to the motion to dismiss, Fisher made no claim that Lint's statements were not related to the proceeding. See *Correllas*, 410 Mass. at 321. Fisher did not file a brief in this appeal.

By documenting Fisher's misconduct in his report and later revealing it to internal affairs, Lint knew he would have to repeat under oath his accusations at Fisher's trial board proceedings and face potential punishment if his testimony was false. See *Correllas*, 410 Mass. at 324. His trial board "testimony, and the statements leading up to it, are part of a continuous transaction where disclosure should occur without fear of a civil action for defamation. See Restatement (Second) of Torts, *supra* at § 588 comment a." *Ibid.*

Because we apply the privilege broadly, it serves as a bar to all of Fisher's causes of action against Lint as they arise out of the same privileged conduct in connection with the quasi judicial trial board proceedings. See *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham*, 11 Mass. App. Ct. 359, 367-368 (1981). See also *Correllas, supra* ("A privilege which protected an individual from liability from defamation would be of little value if the individual were subject to liability under a different theory of tort"); *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140 (1996) (letter in which firm threatened to bring law suit against plaintiff protected by absolute privilege could not form basis of liability on any theory). The motion to dismiss should have been allowed.

The order denying the special motion to dismiss is affirmed. The order denying the motion to dismiss based on an absolute privilege is reversed, a new order is to enter allowing the motion, and judgment is to enter for the defendant dismissing the action.

*So ordered.*