THOMAS MORIARTY *vs.* MAYOR OF HOLYOKE & others.[1]

No. 06-P-1554.

Hampden. November 13, 2007. - March 27, 2008.

Present: LENK, MCHUGH, & MILLS, JJ.

*"Anti-SLAPP" Statute. Practice, Civil,* Motion to dismiss.

In an action by a former city employee against the city, its mayor, and an assistant city solicitor, alleging various tort, contract, and civil rights claims, the judge properly denied the defendants' special motion to dismiss pursuant to G. L. c. 231, § 59H (the "anti-SLAPP" statute), where statements made by the municipal employees acting as agents of the city did not constitute petitioning activity within the purview of the statute. [445-448]

CIVIL ACTION commenced in the Superior Court Department on October 18, 2004.

A special motion to dismiss was heard by *Constance M. Sweeney*, J.

*Lisa Brodeur-McGan* for mayor of Holyoke & others.

*Shawn P. Allyn* for the plaintiff.

LENK, J. A former employee of the city of Holyoke (city or Holyoke), Thomas Moriarty, filed suit against the mayor of Holyoke, Michael Sullivan (named both individually and as mayor); Nicholle Proulx, an assistant city solicitor (also named individually and as an agent of the city); and the city itself (collectively, the city defendants), alleging various tort, contract, and civil rights claims.[2] The city defendants brought a special motion to dismiss pursuant to G. L. c. 231, § 59H (the "anti-

[1]Michael Sullivan, individually and as mayor of Holyoke; Nicholle Proulx, individually and as an agent of Holyoke; city of Holyoke; and Melanson, Heath & Company.

[2]Moriarty also filed several claims against Melanson, Heath & Company. Those claims are not at issue in this appeal. See note 6, *infra.*

SLAPP" statute[3]), which the trial court judge denied. Arguing that the judge erred in denying them the protection of § 59H, they appealed. We conclude that the subject statements, which were made by municipal employees acting as agents of the city, do not constitute petitioning activity within the purview of the anti-SLAPP statute. Accordingly, we affirm the denial of the city defendants' special motion to dismiss.

*Background.* "We draw the background facts of the case from the pleadings and affidavits pertinent to the special motion to dismiss, as well as from the judge's decision and order. Unless otherwise noted, the facts recited are not in dispute." *North Am. Expositions Co. Ltd. Partnership* v. *Corcoran*, 70 Mass. App. Ct. 411, 412, further appellate review granted, 450 Mass. 1104 (2007).[4]

Plaintiff Moriarty served as the clerk of the license commission of the city from 1998 through 2001. He and defendant Sullivan interacted in political opposition, and often with acrimony. For example, during Sullivan's successful mayoral campaign in 1999, Moriarty openly endorsed the incumbent mayor and organized against Sullivan's candidacy. After Sullivan took office in January of 2000, Moriarty was elected president of the Holyoke union of clerks and other municipal workers. Moriarty publicly criticized Sullivan's proposed contract for Holyoke public school teachers; Moriarty alleges that Sullivan shortly thereafter unilaterally reduced Moriarty's salary by a line item budget cut, the only line item alteration in that year's budget. Sullivan formulated a municipal worker consolidation plan, which Moriarty vocally opposed due to its impact on the clerks' union. Moriarty also assisted city employees in organizing against the plan.

The city defendants allege, and Moriarty disputes, that on

[3]The acronym "SLAPP" stands for "strategic lawsuit against public participation." See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 160 n.7 (1998); *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 242 n.2 (2007).

[4]The city defendants filed a motion to strike certain of Moriarty's factual allegations pursuant to Mass.R.A.P. 15(a), 365 Mass. 859 (1974), and Mass. R.A.P. 16(e), as amended, 378 Mass. 940 (1979). We discern no violation of rule 16(e) by Moriarty. Compare *Lynn* v. *Thompson*, 435 Mass. 54, 56 n.4 (2001), cert. denied, 534 U.S. 1131 (2002). Moreover, the facts that the city defendants suggest should be struck are immaterial to our resolution of the issue before us.

December 14, 2001, the owner of a local delicatessen contacted the mayor's office and accused the license commission of irregular practices. That same day, defendant Proulx, accompanied by two Holyoke police officers, confronted Moriarty at his commission office. Proulx informed Moriarty that he had been suspended as clerk by order of the mayor. The officers then secured the office and removed Moriarty. Through the Holyoke police department, Sullivan launched an investigation into the operations of the license commission during Moriarty's tenure.

Between December 15, 2001, and March 15, 2003, the city defendants made numerous statements to the local press regarding the city's investigation. For example, Sullivan described the inquiry as one delving into "procedural irregularities" at the license commission during Moriarty's tenure as clerk and stated that, as a result, Moriarty had been suspended and the locks had been changed at the commission offices. Sullivan also approached the Holyoke city council and asked for a $14,500 appropriation to fund an independent audit of the license commission's financial information and record-keeping.[5]

Based in part on these statements to the press and the city council, Moriarty filed the complaint in this case on October 18, 2004. He alleged twenty-three counts against the city defendants, including defamation, libel, slander, abuse of process, malicious prosecution, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of G. L. c. 12, § 11H.[6] On March 7, 2005, the city defendants moved pursuant to the anti-SLAPP statute to dismiss the seventeen counts arising from their various statements. In a compound memorandum and order disposing of several other motions in the case, the judge denied the special motion to dismiss on May 16, 2006. The city defendants took an interlocutory appeal as of right

---

[5]Moriarty cited in his complaint eighteen articles published during the relevant time period in local newspapers. These articles allegedly contain false and defamatory factual statements of and concerning Moriarty that the city defendants published or caused to be published.

[6]As noted in note 2, *supra*, Moriarty also brought several counts against Melanson, Heath & Company, a firm hired by the city to conduct an audit. Because this appeal is only from the denial of the special motion to dismiss, to which Melanson, Heath & Company was not a party, we are here concerned only with the claims brought against the city defendants.

from the denial of their special motion to dismiss on June 15, 2006. *Fabre* v. *Walton*, 436 Mass. 517, 520-522 (2002), *S.C.*, 441 Mass. 9 (2004).

*Discussion.* We review the denial of the subject G. L. c. 231, § 59H,[7] motion for abuse of discretion or other error of law. *Baker* v. *Parsons*, 434 Mass. 543, 550 (2001). *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 250 (2007). The anti-SLAPP statute provides a quick remedy for citizens who are targeted by frivolous lawsuits based on their government-petitioning activities.[8] *Kobrin* v. *Gastfriend*, 443 Mass. 327, 331 (2005) (*Kobrin*), citing preamble to 1994 House Doc. No. 1520 and *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161-162 (1998) (*Duracraft Corp.*). A defendant can claim protection under the statute if the conduct in question "amounted to the exercise of [the] right to petition the government as that concept is understood in the context of our State and Federal Constitutions." *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 364 (2007) (*Fisher*). See *Kobrin*, *supra* at 333. The statute's scope is limited "to those defendants who petition the government *on their own behalf*. In other words, the statute is designed to protect overtures *to the government* by parties petitioning *in their status as citizens*." (Emphases supplied.) *Kobrin*, *supra* at 332.

The party moving for dismissal based on § 59H has the "initial burden of demonstrating that the activity at issue was 'petitioning activity' within the purview of the anti-SLAPP statute and that [the plaintiff's] claims were ' "based on" [the] petitioning

---

[7]G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1, provides in pertinent part: "In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss."

[8]The statute defines a "party's exercise of its right of petition" as "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government." G. L. c. 231, § 59H.

activities alone and have no substantial basis other than or in addition to [the] petitioning activities.' " *Fisher, supra* at 363, quoting from *Duracraft Corp., supra* at 167-168. As to the first prong of this threshold inquiry, the city defendants argue that their statements to the press and to a lateral governmental body should be considered "petitioning activity" as understood in the anti-SLAPP statute and, by extension, the Massachusetts and United States Constitutions. We disagree.

In *Baker* v. *Parsons*, 434 Mass. at 544-547, a property owner brought suit against two defendants, one of whom had made statements to government agencies regarding the impact of certain construction proposed by the landowner on the nesting habitat of aquatic birds. The defendants' statements were held to be petitioning activity within the meaning of the statute and the suit to have been properly dismissed. *Id.* at 549-555. Four years later, the Supreme Judicial Court noted in the *Kobrin* case that the defendants in *Baker* "were never hired by the government, nor did they serve on behalf of the government to further *its* interests rather than seek redress for their [own] grievances" (emphasis supplied). *Kobrin*, 443 Mass. at 339. The defendant in *Kobrin*, in contrast, was denied the protection of the anti-SLAPP statute for statements he made while appearing before an administrative body as a hired government witness, testifying as he did to further the government's interests. *Id.* at 328-330. In *Fisher*, 69 Mass. App. Ct. at 360-365, we considered the defendant State police sergeant's special motion to dismiss. We concluded that his statements to internal affairs — the basis for the plaintiff's suit — did not constitute petitioning activity. *Id.* at 365.[9] "As in *Kobrin*, [the defendant's] conduct was neither an attempt to redress a wrong he suffered, nor was he petitioning on his own behalf. . . . Rather, he was carrying out his responsibilities as a State police officer." *Id.* at 364-365.

In the case before us, we discern no material difference for

---

[9]In *Fisher*, while agreeing that the special motion to dismiss under G. L. c. 231, § 59H, had been correctly denied, we ultimately held that an absolute privilege applied to the defendant's statements, and, accordingly, we reversed the order denying the motion to dismiss brought under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), and entered judgment for the defendant. *Id.* at 366-370. We have no cause to consider whether the city defendants here would enjoy the protection of any similar privileges or immunities.

purposes of the anti-SLAPP statute between the subject activities of the city defendants and those of the paid government witness in *Kobrin* and the State trooper in *Fisher*. The city defendants explicitly argue that they were at all relevant times acting as agents of the city. By their own admission, then, the city defendants were not acting on their own behalf or seeking redress for a grievance of their own as citizens. See *Fisher*, 69 Mass. App. Ct. at 365. Nor were they "performing services for the government as contractors." *Kobrin*, 443 Mass. at 332. Rather, for all practical purposes, the city defendants *were*, as municipal agents, the face of Holyoke's executive branch of government. If the anti-SLAPP statute does not protect statements by a government contractor or a State trooper acting pursuant to his duties, it also does not protect statements made to the press or other municipal bodies by Holyoke's agents acting in their official capacities.[10]

The city defendants make much of the first sentence of a footnote in *Kobrin*, 443 Mass. at 332 n.8, quoted in the margin.[11] They argue that this language limits the scope of *Kobrin*, suggesting that it applies only to circumstances involving government contractors seeking the protection of the anti-SLAPP statute. By virtue of the fact that they acted as the government and not as government contractors, they therefore contend that it is inappropriate to apply the *Kobrin* definition of the "right of petition" to them.

We are not persuaded by this argument, not least because the city defendants — who do little more than baldly assert that their situation is factually distinct and thus "difficult" in the language of the *Kobrin* footnote — do not explain why the *Kobrin* definition should not apply here. They ignore the second sentence of the *Kobrin* footnote, which underscores *Kobrin*'s

[10]Although the complaint names Sullivan and Proulx in their individual as well as their official capacities, the acts alleged all appear to have been performed in their roles as city officials.

[11]"No definition of the phrase ['based on said party's exercise of its right of petition under the constitution'] will encompass every case that falls within the statute's reach, and some difficult factual situations will have to be assessed on a case-by-case basis. What we seek to do is limit the statute's protection, in accordance with legislative intent, to the type of petitioning activity the Constitution envisions in which parties petition their government as citizens, not as vendors of services." *Kobrin*, 443 Mass. at 332 n.8.

recognition that, "in accordance with legislative intent," the protection of the statute is to be limited "*to the type of petitioning activity the Constitution envisions in which parties petition their government as citizens . . .*" (emphasis supplied). *Ibid.* The city defendants merely state the obvious — they are not government contractors — but fail to appreciate the import of their having acted as the government itself and not as citizens.

As did the judge in her well-reasoned decision, we reject the contention that the anti-SLAPP statute protects the purported governmental "self-petitioning" at issue here. The scope of the concept "right of petition" as a gateway requirement of § 59H is coextensive with the concept as employed in the United States and Massachusetts Constitutions. G. L. c. 231, § 59H. See *Kobrin*, 443 Mass. at 333; *Fisher*, 69 Mass. App. Ct. at 364. Because the constitutional right is understood as the right of *citizens* to seek redress *from the government* for grievances, see *Kobrin*, *supra* at 332 n.8, the government cannot "petition" itself within the meaning of G. L. c. 231, § 59H.[12]

> *Order denying special motion*
> *to dismiss affirmed.*

---

[12]Although a defendant's motivation is not scrutinized during the threshold § 59H inquiry as to whether the subject statements were petitioning activity, the defendants state in their brief that they intended to achieve a specific governmental goal by their statements, i.e., the proper operation of the license commission. If anything, this underscores that the city defendants were not seeking redress for their own grievances or petitioning on their own behalf as citizens, but were instead acting as governmental employees or officials in furtherance of governmental interests and objectives. Compare *Kobrin*, 443 Mass. at 329-330 (defendant, denied anti-SLAPP protection, acted as paid witness retained by government to further governmental interest), with *Baker* v. *Parsons*, 434 Mass. at 549 (defendants, granted protection of anti-SLAPP statute, had independent, preexisting interest as nonprofit organization and individual citizen in matter about which they spoke).