186

SEAN M. KEEGAN vs. GEORGE R. PELLERIN & another.[1]

No. 08-P-1987.

Worcester. September 21, 2009. - January 27, 2010.

Present: McHUGH, COHEN, & SIKORA, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Practice, Civil,* Attorney's fees.

In proceedings in District Court arising from a defamation action, the judge erred in denying the defendants' special motion to dismiss the complaint pursuant to G. L. c. 231, § 59H, the "anti-SLAPP" statute, where the defendants (a trust that managed a condominium complex and one of its security officers) made the requisite initial showing that the security officer's petitioning activities (i.e., reporting to the police the suspected criminal activity of the plaintiff, a resident of the complex, and filing criminal complaints), either on his own behalf or on behalf of his employer, were of the sort firmly protected by the statute; and where the plaintiff simply could not show that these activities were devoid of any reasonable factual support, given that the report was based, at a minimum, on a resident's complaint as well as the security officer's previous experience with the plaintiff, and was substantiated by at least one other witness. [189-192]

CIVIL ACTION commenced in the Worcester Division of the District Court Department on April 8, 2008.

A special motion to dismiss was heard by *Vito A. Virzi*, J.

*Edward F. Whitesell, Jr.,* for the defendants.

*Stephen A. McNerney* for the plaintiff.

McHUGH, J. After a disorderly conduct charge against the plaintiff, Sean M. Keegan, was dismissed in the District Court, Keegan filed a civil action for defamation against George R. Pellerin, Warley M. Freitas, and the Green at Shrewsbury Condominium Trust (trust), alleging that Pellerin and Freitas had made

---

[1] The Green at Shrewsbury Condominium Trust. We note that the trust was not the proper party to sue. See *Morrison* v. *Lennett*, 415 Mass. 857, 859-860 (1993). In light of our result, we need not address this issue.

false reports to the police about his activities.[2] Pellerin and the trust filed a special motion to dismiss pursuant to G. L. c. 231, § 59H, the so-called "anti-SLAPP" statute, designed to protect individuals from strategic litigation against public participation. A judge of the District Court denied the motion. Pellerin and the trust have appealed, see *Fabre* v. *Walton*, 436 Mass. 517, 520-522 (2002), and we reverse.

*Background.* The complaint, the affidavits, and the other papers submitted by the parties in connection with the motion present differing accounts of the events that led to the present litigation. The account presented by Pellerin and the trust reveals that the trust manages a condominium complex known as "the Green at Shrewsbury Condominiums" (Green). The trust has employed Pellerin as a security officer at the Green since 1994.

Keegan is a resident at the Green, as is Freitas. Before the evening of relevance here, Pellerin and two other security officers had received complaints from residents of the Green to the effect that Keegan was peering into the windows of various units at night. On one occasion, police questioned Keegan after a female resident had telephoned to say that she had seen him exposing himself, but the incident resulted in no formal charges.

On the evening of August 18, 2005, Pellerin was on duty when, at approximately 9:00 p.m.,[3] he received a telephone call that an individual was looking into the windows of condominium unit 28C. Pellerin responded to the call and, with what he said was "an unobstructed view of Unit 28C," saw Keegan outside of the unit, "staring" into a window, as he "strok[ed] a black cat and walk[ed] back and forth in front of the unit's window." Pellerin headed for unit 28C and, while en route, contacted the Shrewsbury police department, where a dispatcher informed him that officers, apparently alerted to Keegan's activity by someone else, were already on the way.

[2] It appears that Freitas was defaulted in the District Court. He has no role in these appellate proceedings.

[3] There is some discrepancy about the time that the incident occurred. Pellerin's written statement to police states that he received a telephone call at about 11:11 p.m., reporting someone looking into windows, and the Shrewsbury police incident narrative reports that an officer responded at about 11:17 p.m., while Pellerin stated in his affidavit that he received a telephone call at about 9:00 p.m., reporting an individual looking into windows.

When Pellerin reached unit 28C, Keegan was gone, but by that time the police had arrived and Pellerin saw Freitas come out of the unit where he lived and begin speaking with Shrewsbury police Officer Timothy O'Toole. Pellerin told another Shrewsbury police officer what he had seen, and then followed Officer O'Toole to the front door of Keegan's unit, where, in response to a knock, Keegan appeared at the door, sweating and out of breath. Officer O'Toole, who later wrote in his official report that Keegan had been the suspect in "at least three" similar incidents he investigated and "has continually tormented the residents of the Shrewsbury Green . . . by looking through their windows without them knowing it," told Keegan that he would be charged with "disorderly conduct, Peeping Tom,"[4] and that a summons would issue.

Keegan's account is different. His affidavit notes that he was taking a final examination for a course in Greek and Roman mythology between 6:00 P.M. and 9:00 P.M. on August 18, 2005. Upon returning to the Green around 11:00 P.M., he went directly to his unit, where he picked up a bag of trash and carried it to a nearby dumpster. As he returned to his unit, Keegan noticed that a resident of building 24, later identified as Freitas, seemed to be following him. Remembering that he had some bottled water in his car, Keegan went to the parking lot to retrieve it. Along the way, Keegan noticed Pellerin in front of building 38, trying to look through a chain link fence between buildings 28 and 40. As Keegan returned to his unit, water in hand, he passed Freitas, who was now standing in front of Keegan's building. Shortly thereafter, Pellerin and Officer O'Toole arrived at Keegan's doorstep, and Officer O'Toole made accusations, which Keegan denied, that Keegan had been looking into people's windows.

Officer O'Toole's report produced a Shrewsbury police department application for a criminal complaint charging Keegan with disorderly conduct, which issued after a clerk-magistrate found probable cause. Thereafter, trial was scheduled and rescheduled four times. Ultimately, however, the charge was dismissed without prejudice before a trial occurred, apparently because not all of the witnesses appeared on a scheduled trial date.

---

[4]See G. L. c. 272, § 53. See generally *Commonwealth* v. *Swan,* 73 Mass. App. Ct. 258, 262-265 (2008).

After the criminal charge was dismissed, Keegan commenced this action. The trust and Pellerin responded with a special motion to dismiss. Following a hearing, a judge of the District Court denied the motion with a written notation that findings had been made on the record. Unfortunately, the portion of the recording containing the findings is unintelligible, so the findings could not be transcribed. Accordingly, the parties stipulated as follows:

> "[The judge] concluded that the motion could not be decided based on the affidavits and that there was a question of fact. The court made no other findings and denied the Defendants' special motion to dismiss."

This appeal followed.

*Discussion.* Turning from facts to law, the anti-SLAPP statute, G. L. c. 231 § 59H, is designed to protect the constitutional right to petition by creating a mechanism for "expedient resolution of suits designed to deter or retaliate against individuals who seek to exercise their right of petition." *Wenger* v. *Aceto*, 451 Mass. 1, 4 (2008) (*Wenger*), citing *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 121 (2002). Success on a special motion to dismiss under the statute requires the moving party to make a threshold showing that the claims against him are based solely on "petitioning" activities. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 167-168 (1998). *Office One, Inc., supra* at 122.

Once the moving party establishes that the claims against it are based solely on petitioning activity, the burden shifts to the nonmoving party to show by a preponderance of the evidence that the moving party's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law," and that the moving party's activities "caused actual injury to the responding party." *Wenger, supra* at 5, quoting from G. L. c. 231, § 59H. Accordingly, factual conflicts at the motion stage require resolution, on some occasions after discovery, see *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 602 n.12 (2000), but a motion should not be denied on grounds that there is a factual issue for trial. See, e.g., *Fabre* v. *Walton*, 436 Mass. at 521-522 (statute's protections against harassment and burdens of litigation would be lost if party is forced to litigate case to its conclusion before obtaining appellate relief).

Here, neither party has requested discovery on the anti-SLAPP issue and we can apply the appropriate legal standards to the record that was before the motion judge. See *Baker* v. *Parsons*, 434 Mass. 543, 553-555 (2001). Pellerin and the trust have made the requisite initial showing, for reporting suspected criminal activity to the police and filing criminal complaints are activities the anti-SLAPP statute firmly protects. See *Wenger*, 451 Mass. at 5-6; *Benoit* v. *Frederickson*, 454 Mass. 148, 153 (2009). Contrast *Kalter* v. *Wood*, 67 Mass. App. Ct. 584, 587-588 (2006). Counts I and III of Keegan's complaint, the claims against Pellerin and the trust, are based solely on Pellerin's telephone call to the Shrewsbury police department on August 18, 2005, and the subsequent court proceedings. Keegan does not allege that Pellerin spoke about the matter to anyone other than police. Contrast *Burley* v. *Comets Community Youth Center, Inc.*, 75 Mass. App. Ct. 818, 821-824 (2009).

The showing made by Pellerin and the trust shifts the burden to Keegan, and that burden is difficult to meet. On the basis of the pleadings and the affidavits, Keegan must show that "no reasonable person could conclude" that Pellerin's report to the police was supported either in fact or in law. *North Am. Expositions Co. Ltd. Partnership* v. *Corcoran*, 452 Mass. 852, 865-866 (2009). See *Baker* v. *Parsons*, 434 Mass. at 555 n.20. But Keegan cannot meet his burden if Pellerin and the trust show that Pellerin had reasonable factual support for his report, even if the report turns out to have been erroneous. See *Wenger*, 451 Mass. at 6. Moreover, Pellerin demonstrates "reasonable factual support" if his affidavits contain "evidence that, if believed, would support a finding in" his favor. *Benoit* v. *Frederickson, supra* at 154 n.7.[5] In other words, to succeed, Keegan must

---

[5]Considered in isolation, the phrase "evidence that, if believed, would support a finding in the defendants' favor," quoted from *Benoit* v. *Frederickson, supra*, is capable of at least two meanings. One is that a judge faced with a special motion to dismiss is to look at the defendant's proffer, decide whether she believes it, and, if she does, then decide whether it supports a finding in the defendant's favor. If the proffer supports such a finding, and if there is an arguable basis in law for the petitioning activity, the defendant prevails and the complaint is dismissed. The second meaning is that the judge is to determine whether a finding in the defendant's favor would be warranted if she believed the contents of the defendant's proffer. When the judge makes that determination, she stops, because the second meaning does not require, or permit, the

show that Pellerin's telephone call to the police was a "sham." *Donovan* v. *Gardner*, 50 Mass. App. Ct. at 600 & n.10.

On this record, Keegan cannot succeed. If one believes Pellerin's submissions, his telephone call was based, at a minimum, on a resident's complaint that someone was looking into windows, and on Pellerin's previous experience with Keegan. At least one other witness, Freitas, substantiated Pellerin's description of the events that occurred on the night in question. For their part, the police officers took action based on their own investigation at the scene and their prior experience with Keegan. Under those circumstances, Keegan simply cannot show that Pellerin's report to the police was "devoid of any reasonable factual support." *Wenger*, *supra* at 5, quoting from G. L. c. 231, § 59H.

In the face of those obstacles, Keegan, relying on *Kobrin* v. *Gastfriend*, 443 Mass. 327 (2005), asserts that, although the residents who allegedly were being spied on would have had a right to take advantage of the anti-SLAPP statute had they made reports to the police, Pellerin was not petitioning on his own behalf and, therefore, has no such right. In *Kobrin*, the court held that the defendant psychiatrist, whom State police had retained as a contractor to assist in an investigation of the plaintiff's prescription drug practices and who provided the police with an affidavit critical of those practices, could not take advantage of the anti-SLAPP statute in the plaintiff's resulting defamation action "[b]ecause the defendant was not seeking from the government any form of redress for a grievance of his own or otherwise petitioning on his own behalf." *Id.* at 328-330. Other cases have reached similar conclusions with respect to the unavailability of the anti-SLAPP statute where govern-

judge to take the next step and decide whether she actually does believe the proffer. But the phrase cannot be considered in isolation, for it occurred in a footnote that began by stating that "[t]he question to be determined by a judge in deciding a special motion to dismiss is not which of the parties' pleadings and affidavits are entitled to be credited or accorded greater weight, but whether the nonmoving party has met its burden (by showing that the underlying petitioning activity by the moving party was devoid of any reasonable factual support or arguable basis in law, and whether the activity caused actual injury to the nonmoving party)." *Ibid*. Given that introduction, we think the phrase was intended to have the second meaning, and we proceed accordingly.

ment agents engaged in the alleged petitioning activity. See *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 364-365 (2007) (holding that State police officer's report on another officer's conduct was made in his capacity as State police officer); *Moriarty* v. *Mayor of Holyoke*, 71 Mass. App. Ct. 442, 447 (2008) (holding that city defendants were acting as agents of the city, and not seeking redress for personal grievance).

The cases of *Kobrin, Fisher*, and *Moriarty* are not helpful to Keegan, for, at bottom, they rest on the commonsense principle that a statute designed to protect the constitutional right to petition has no applicability to situations in which the government petitions itself. See *id.* at 448. Here, the government was not petitioning itself. Instead, Pellerin was petitioning either on his own behalf, and entitled to the statute's shelter for his individual activity, or, as Keegan argues, on behalf of his employer, the trust. If the latter, then the trust, which can act only through its agents, paid or other, see, e.g., *Sunrise Properties, Inc.* v. *Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66 (1997), was the petitioner and was exercising a petitioning right it undoubtedly possessed. See generally *Associated Indus. of Mass.* v. *Attorney Gen.*, 418 Mass. 279, 288-289 (1994); *Duracraft Corp.* v. *Holmes Prod. Corp.*, 42 Mass. App. Ct. 572, 581-582 (1997), *S.C.*, 427 Mass. 156 (1998). In that case, Pellerin remains entitled to the statute's protection because we have held that when a nongovernmental person or entity is the petitioner, the statute protects one who is engaged to assist in the petitioning activity under circumstances similar to those this record reveals. See *Plante* v. *Wylie*, 63 Mass. App. Ct. 151, 156-157 (2005) (attorney who represented petitioning citizens was entitled to protections of anti-SLAPP statute). See also *Office One, Inc.*, 437 Mass. at 121-124 (condominium trustees who urged governmental agencies not to approve sale of condominium units to plaintiff were entitled to anti-SLAPP protection).

*Conclusion.* The order denying the special motion to dismiss filed by Pellerin and the trust is reversed, and a new order is to enter allowing the motion. The case is remanded to the District Court for entry of judgment dismissing the complaint against Pellerin and the trust, and awarding them appropriate attorney's fees pursuant to G. L. c. 231, § 59H. Pellerin and the trust may submit

to this court a petition for appellate fees and costs within fifteen days of the date of the rescript, and Keegan will have fifteen days thereafter to respond. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*