Wilkins, Douglas H., J.
Before the court is Plaintiff and Defendant-in-Counterclaim Pegasystems, Inc.’s Motion to Dismiss the Counterclaim in its Entirety (“Motion”), which the Plaintiff-in-Counterclaim, Mark Manning has opposed. The Counterclaim asserts several claims against Pegasystems, including tortious interference with Manning’s advantageous and contractual relationship with a company called Healthx (Counterclaims I and II), violation of G.L.c. 93A (Counterclaim III), and claims for Fraudulent and Negligent Misrepresentation (Counterclaims IV and V). After hearing and upon consideration of the parties’ written submissions, the Motion is ALLOWED.
BACKGROUND
The counterclaim alleges the following basic facts. In May 2005, Manning was hired as Director of Healthcare Services for Pegasystems, a Massachusetts-based software company. In December 2005, Manning was asked to execute a “Standards Letter,” which contained a narrow non-competition agreement (limited to ten agreed-upon companies), as well as certain non-solicitation and non-disclosure agreements. Between 2005 and 2013, Manning’s position, responsibilities and compensation at Pegasystems materially changed on multiple occasions. At no time after any of these employment changes did Manning execute a new Standards letter.
In December 2013, Manning accepted an offer to become CEO of Healthx, an Indianapolis-based healthcare technology company. Healthx does not compete with Pegasystems in any way, and was not one of the ten companies listed in the Standards Letter.
In early January 2014, Manning informed Pegasystems that he was resigning to take the position at Healthx. On January 31, 2014, Manning’s last day at Pegasystems, he conducted an exit interview with the company. During the course of that interview, Pegasystems told Manning that he could return any electronic equipment to Pegasystems “the next time he was in Cambridge.” At no time during the interview did Pegasystems mention the Standards Letter.
On February 6, 2014, Healthx publicly announced that it had hired Manning as its President and CEO. The veiy next day, Pegasystems sent a letter to Manning and Healthx falsely accusing Manning of violating the terms of the Standards Letter. Among other things, that letter contended that “Healthx’s solicitation and hiring of [two former Pegasystems employees] stand in direct violation of your obligations under the Standards Letter and obligations of Healthx under common law.” The letter was signed by Shawn Holt, Pegasystems’ Vice President of Global Customer Transactions and addressed to Manning in his personal capacity and in his capacity as CEO of Healthx.
On or about Monday, February 10, 2014, the first business day after its receipt of the letter from Mr. Holt, Pegasystems had additional communications directly with Healthx. That same day, Healthx terminated Manning due to concerns regarding potential litigation with Pegasystems.
On March 6, 2014, Pegasystems initiated this lawsuit against Manning, asserting claims for breach of contract, breach of the covenant and fair dealing and misappropriation of confidential information. Healthx is not a defendant in this lawsuit or any other lawsuit initiated by Pegasystems.
DISCUSSION
At this early stage of the proceeding, the only question is whether the challenged counts and the facts incorporated therein plausibly suggest that the plaintiff is entitled to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). The court takes the well-pled facts in the complaint as true only for purposes of decision on the Motion. Galiastro v. Mortg. Elec. Regis. Sys., 467 Mass. 160, 171 (2014). The court also reviews documents attached to or specifically referenced in the pleadings for purposes of Mass.R.Civ.P. 12(b)(6). See generally Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).
Pegasystems asserts the affirmative defense of litigation privilege. To prevail on a motion pursuant to Mass.R.Civ.P. 12(b)(6) on the basis of an affirmative defense, it must establish that (1) the facts establishing the defenses are definitively ascertainable from the Complaint and other information properly considered on a Rule 12(b)(6) motion and (2) those facts establish the affirmative defense with sufficient certainty to prove that the plaintiff has no plausible claim of entitlement to relief. See Bagley v. Moxley, 407 Mass. 633, 637 (1990) (issue preclusion); Cavanagh v. Cavanagh, 396 Mass. 836, 839 (1986) (same); Doe v. City of Fitchburg, 76 Mass.App.Ct. 1106, 919 N.E.2d 715 (Rule 1:28 order; post-Iannaccindj, and cases cited; *304 Brown v. Accredited Home Lenders, Inc., 2009 WL 6297594 (2009) (Troy. J.) [26 Mass. L. Rptr. 559] (holder of a note failed to establish affirmative defense ofbona fide purchaser for value at Rule 12(b)(6) stage).
Statements made in the course of or concerning court proceedings “are absolutely privileged provided such statements relate to that proceeding.” Sriberg v. Raymond, 370 Mass. 105, 108-09 (1976). See also Correllas v. Viveiros, 410 Mass. 314, 324 (1991); Giuffrida v. High Country Investor, Inc., 73 Mass.App.Ct. 225, 242 (2008), and cases cited; Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 361-62 (1981). The privilege is not limited to defamation cases:
This absolute privilege protects an attorney’s efforts on behalf of his client from any civil liability, regardless of the legal dress it wears. Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984). Indeed, if the statements, as here, were relevant to the litigation, the absolute privilege provides a complete defense even if the statements were false and “uttered maliciously or in bad faith.” Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 140 (1996).
Crocker v. Citizens Bank, 2003 WL 734430 (Sup.Ct., 2003) (Gants, J.).
The Nutter case is particularly germane. There, an attorney’s pre-litigation response to a demand letter sent under G.L.c. 93A was absolutely privileged even though it contained an allegedly bad faith threat and was sent directly to a client who was represented by counsel, in alleged (but contested) violation of then-applicable S.J.C. Rule 3:07, Canon 7, DR 7-104. Nutter, 41 Mass.App.Ct. at 140-41. That holding illustrates that the litigation privilege may bar at least some complaints based upon the manner of communication, not just the content of the statements.
Giuffrida, 73 Mass.App.Ct. 242-43, also bears directly upon the plaintiffs assertion that the litigation privilege does not apply because the author of the letter went beyond his role as attorney and acted as officer and agent in undertaking certain actions. The litigation privilege applies not only to statements by attorneys but also to “communications by a parly” as long as the other conditions for the privilege are present. Id.
Pegasystems has shown on the face of the Complaint that its communications and actions were “preliminary to a proposed judicial proceeding” and that “legal action was contemplated when the allegedly [offending] statements [and actions] were made.” Giuffrida, 73 Mass.App.Ct. at 242.[1] It therefore has the benefit of the holdings in Nutter, 41 Mass.App.Ct. at 140-41, and Giuffrida, 73 Mass.App.Ct. 242-43, which immunize its direct communications with the plaintiff. It is true that paragraph 26 of the counterclaim alleges that on or about Monday, February 10, 2014, the first business day after its receipt of the letter from Mr. Holt, Pegasystems had additional communications directly with Healths. In context, that paragraph appears to allege more facts concerning the prospect or threat of litigation. Without further specification concerning the nature of those conversations, this sparse allegation is not enough to save the complaint.[2]
There is no allegation that the complaint was filed for an improper purpose unrelated to properly adjudicating Pegasystems’s claims and without probable cause. Compare Brooks Automation, Inc., 20 Mass. L. Rptr. 541, 2006 WL 307948 (Mass.Super. Jan. 24, 2006 at *8), citing G.L. Enterprises v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991).
ORDER
For the foregoing reasons, Plaintiff and Defendant-in-Counterclaim Pegasystems, Inc.’s Motion to Dismiss the Counterclaim in its Entirety is ALLOWED.

The trial-type nature of the quasi-judicial disciplinary proceedings in Fisher v. Lint, 69 Mass.App.Ct. 360, 366 (2007) (applying judicial privilege to statements relating to an agency’s adjudicatory hearing), are not comparable to anon-judicial foreclosure in Massachusetts, which has no “procedural safeguards” that “adequately minimize the risk that defamation or other tortious conduct will occur.” Indeed, that test, as articulated in Fisher, calls for denial of the privilege in the context of a non-judicial foreclosure, which lacks procedural safeguards aimed at ensuring truthfulness, such as the right to counsel, the right to present evidence, the right to cross examine witnesses and the threat of perjury when giving testimony under oath (see Fisher, 69 Mass.App.Ct. at 369-70).

The court does not intend to foreclose a motion to amend the complaint to allege communications that did not concern potential litigation.