UNITED STATES of America

v.

Jean C. HYLTON.

Crim. No. G–82–1.

United States District Court,
S.D. Texas,
Galveston Division.

June 10, 1982.

George A. Kelt, Jr., Asst. U.S. Atty., Houston, Tex., for the Government.

Donald W. MacPherson, MacPherson & McCarville, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

On January 20, 1982, a federal grand jury indicated Jean C. Hylton on charges of endeavoring to intimidate and impede two IRS special agents in violation of 26 U.S.C. § 7212(a). The indictment alleged that the defendant and her husband were leaders of a semi-organized tax rebellion movement, and that the defendant, in furtherance of that movement, had attempted to obstruct a criminal investigation into the tax liability of her son by filing with the Justice of the Peace and the County Attorney of Chambers County, Texas, a complaint of criminal trespass against the two agents.

At the insistence of the Government, the case was tried before a jury, which after four days of trial, deliberated for slightly more than three hours before returning its verdict of guilty. After the verdict was announced in open court, the defendant renewed her motion for judgment of acquittal, which the Court denied. The Court, however, has reconsidered, *sua sponte,* the defendant's motion for judgment of acquittal, and for the reasons set forth below is of the opinion that the motion must be granted.

### I. The Factual Setting

There is little serious dispute as to the factual occurrences which form the basis for the Government's charge of criminal undertaking in this case. Shortly after 6:00 p.m. on the evening of November 4, 1981, IRS special agents Michael E. Rentsch and Thomas E. Artru entered the Hylton premises to inquire of the whereabouts of the defendant's son, David Hylton. They were met by the defendant at the front of a patio adjoining the defendant's house, and a conversation ensued, after which the agents departed. Both the agents and the defendant tape-recorded the conversation, and there is no dispute as to what transpired.

The following day, the defendant, armed with her recording, filed a criminal complaint against the agents with Chambers County Attorney Eugene T. Jenson. The complaint was factually accurate[1] and properly alleged the elements of criminal trespass pursuant to Tex.Penal Code Ann. tit. 7 § 30.05 (Vernon Supp.1980–81).[2] Subsequently, criminal prosecution in state court was commenced by information. The action was removed to this Court where,

---

1. The complaint alleged that on or about November 4, 1981, Michael E. Rentsch and Thomas E. Artru did

   intentionally and knowingly enter property and the said habitation of Jean Hylton without the effective consent of the said Jean Hylton, and the said Michael E. Rentsch and Thomas E. Artru acting together, did then and there have notice not to enter said premises, in that Jean Hylton, the owner of said premises had signs posted to be reasonably likely to come to the attention of intruders and the posted signs warned Michael E. Rentsch and Thomas E. Artru not to enter said premises.

   The Government, in its complaint against the defendant, asserted that she had fraudulently caused criminal trespass charges to be filed against the IRS agents, contending that in fact there were no "no trespassing" signs posted on the property at the time of the agents' entrance. The evidence, however, overwhelmingly points to a contrary conclusion. Further, it is clear that responsible officials in Chambers County were aware from personal knowledge that conspicuously posted signs adorned the Hylton property prior to the occasion in question.

2. Section 30.05 provides:

   (a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

   (1) had notice that the entry was forbidden; or

   (2) received notice to depart but failed to do so.

after the presentation of the state's case-in-chief, the Court, relying upon *Foster v. United States,* 296 F.2d 65, 67 (5th Cir. 1962), entered judgment of acquittal. (When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justified).

██ The issue before the Court is whether the defendant can be convicted of violating 26 U.S.C. § 7212(a) for filing a non-fraudulent criminal complaint against federal agents with appropriate local law enforcement officials. The gravamen of the Government's case is that the defendant, in lodging her complaint, did not act in a good faith assertion of her own rights, but rather with the specific purpose and intent of obstructing an IRS investigation into the criminal liability of her son. Hence, the Government contends that she can be convicted because she acted with an obstructionist's heart.

The Court disagrees. Even assuming the evidence to have established beyond any doubt that the defendant acted with the sole purpose of obstructing the investigation of the two IRS agents, the Court finds the application of the criminal law to the facts and circumstances of this case constitutes an impermissible infringement upon the first amendment right of the defendant to petition the government for redress of grievances. Accordingly, even construing the evidence and reasonable inferences therefrom in a manner supportive of the jury's verdict, the Court holds that the defendant has committed no offense proscribed by 26 U.S.C. § 7212(a).

II. *Section 7212(a) and the Right to Petition*

██ The first amendment right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1342 (7th Cir.1977). There can be no doubt that the filing of a legitimate criminal complaint with local law enforcement officials constitutes an exercise of the first amendment right.

██ It is basic to federal jurisprudence that courts must seek any reasonable construction of a statute that is consistent with its legislative purpose so as to avoid serious constitutional doubt. *Schneider v. Smith,* 390 U.S. 17, 26, 88 S.Ct. 682, 687, 19 L.Ed.2d 799 (1968); *United States v. Rumely,* 345 U.S. 41, 45–46, 73 S.Ct. 543, 545–46, 97 L.Ed. 770 (1953); *Stern v. United States Gypsum, supra,* at 1344. The Court finds nothing in the language of 26 U.S.C. § 7212(a), or in its legislative history, which suggests that Congress intended in any way to infringe upon a citizen's right to lodge through proper channels a complaint about the conduct of any federal official. *See Stern v. United States Gypsum, supra,* at 1345–46. The Court therefore holds that 26 U.S.C. § 7212(a) was not intended to override the right to petition by making punishable as a criminal offense otherwise constitutionally protected conduct.

██ Despite the defendant's questionable motivation and intent, the Court holds that the challenged conduct was constitutionally protected under the first amendment. It is well settled that liability can be imposed for activities ostensibly consisting of petitioning the government for redress of griev-

(b) For purposes of this section:
(1) "Entry" means the intrusion of the entire body; and
(2) "Notice" means:
   (A) oral or written communication by the owner or someone with apparent authority to act for the owner;
   (B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; or

   (C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden.
   (c) An offense under this section is a Class B misdemeanor unless it is committed in a habitation or the actor carries a deadly weapon on or about his person during the commission of the offense, in which event it is a Class A misdemeanor.

ances only if the petitioning is a "sham," and the real purpose is not to obtain governmental action, but otherwise to obtain an unlawful result. *Otter Tail Power Co. v. United States,* 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359 (1973); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512–13, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 135, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961). In the present case, even construing the evidence most strongly in support of the verdict, no triable issues of fact exist with respect to any contention that the defendant's conduct fell within the so-called "sham" exception to the *Noerr-Pennington* doctrine. It is clear that the defendant genuinely sought governmental response to her complaint against the IRS agents, namely, the filing of criminal charges by officials of Chambers County. In such a situation, the defendant's intent or purpose in lodging the complaint is of no moment. *United Mine Workers v. Pennington, supra,* 381 U.S. at 670, 85 S.Ct. at 1593; *Stern v. United States Gypsum, supra,* at 1343. *See Noerr, supra,* 365 U.S. at 139, 81 S.Ct. at 530. Nor does this case involve a pattern of repetitive complaints carrying the hallmark of unsubstantial claims that would permit a factfinder to conclude that the "administrative and judicial processes" have been abused.[3] *Otter Tail Power Co., supra,* 410 U.S. at 380, 93 S.Ct. at 1031; *California Motor Transport Co., supra,* 404 U.S. at 513, 92 S.Ct. at 613; *WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003, 1031–32 (N.D.N.Y.1980).

In sum, the Court finds that the defendant's activities alleged by the Government to be in violation of 26 U.S.C. § 7212(a) all fall within the aegis of constitutionally protected expression under the first amendment. It is irrelevant to the applicability of the right to petition that its exercise might have the effect of intimidating or impeding federal officials about whom complaints are made, or even that the complainer might be aware of and pleased by such prospects. This effect follows too naturally from its cause for its presence to vitiate the propriety of the use of first amendment rights, if those rights are to retain meaning. The possibility that a citizen who feels himself to have been abused by a particular federal official may take satisfaction when the officer gets his perceived due is too human for first amendment protection to depend upon its absence. *Stern v. United States Gypsum, supra,* at 1343. *See Noerr, supra,* 365 U.S. at 143–44, 81 S.Ct. at 532–33.

Therefore, upon reconsideration by the Court, it is ORDERED, ADJUDGED and DECREED that the defendant's motion for judgment of acquittal be and the same is hereby GRANTED, and that judgment enter accordingly.

---

**3.** Nor is there evidence that the defendant brought any undue influence or pressure to bear on the officials of Chambers County to bring criminal charges against the two special agents. County Attorney Jenson testified at trial that he had filed the criminal informations because defendant's complaints indeed appeared to allege violations of the Texas criminal trespass statute, although he also testified before the federal grand jury that a subjective fear of vexatious or harassing litigation by the defendant or her husband was a factor in his decision to file the criminal charges.