NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1711                                          Appeals Court

KEVIN E. O'GARA  vs.  DORENE ST. GERMAIN.

No. 15-P-1711.

Plymouth.    September 12, 2016. - May 11, 2017.

Present:  Agnes, Neyman, & Henry, JJ.

"Anti-SLAPP" Statute.  Practice, Civil, Motion to dismiss.


Civil action commenced in the Superior Court Department on
March 26, 2015.

A special motion to dismiss was heard by Christopher J.
Muse, J.


Sarah J. Long for the defendant.
Gregory N. Jonsson for the plaintiff.


AGNES, J.  This case requires us to apply the "anti-SLAPP"

statute, G. L. c. 231, § 59H, to a civil lawsuit filed against

the protected party under a domestic violence restraining order.

The defendant, Dorene St. Germain, the protected party, reported

to the police her concern that her former husband, the

plaintiff, Kevin E. O'Gara, violated the no-contact provision of

the order by mailing documents to her.  The police investigated the complaint and arrested O'Gara.  Even though the criminal charges against O'Gara were dismissed, we conclude that St. Germain's conduct in reporting her concern to the police was petitioning activity under the anti-SLAPP statute and, in the circumstances of this case, the retaliatory civil suit filed against her was based entirely on her petitioning activity and therefore should have been dismissed.

St. Germain obtained a permanent restraining order that barred O'Gara from contacting her, except to notify her of "court proceedings . . . by mail, or by sheriff, or other authorized officer when required by statute or rule."[1] St. Germain obtained the initial protective order in 1997, several years after her divorce from O'Gara.  Thereafter, O'Gara sought unsuccessfully on several occasions to have the protective order modified or vacated.

On April 1, 2014, St. Germain reported to the police that O'Gara contacted her by mail in violation of the permanent order.  The New Bedford police department assigned Officer Randal Barker to investigate the matter.  Later that day, as a

---

[1] This language appears in section A(2) of the printed form used to memorialize G. L. c. 209A orders.  Under G. L. c. 209A, § 9, responsibility for the design of the standard form of the protective order is assigned to "the administrative justices of the superior court, probate and family court, district and the Boston municipal court departments."

result of his investigation, O'Gara was arrested and charged with a criminal violation of the abuse prevention order. That charge was later dismissed on the ground that there was insufficient evidence to prove that O'Gara violated the order.[2] O'Gara, in turn, filed this civil lawsuit against St. Germain alleging that she caused Officer Barker to arrest him without probable cause.[3] St. Germain responded by filing a special motion to dismiss under G. L. c. 231, § 59H, asserting that the lawsuit was based entirely on her protected petitioning activity. A judge of the Superior Court denied the motion.

Background. The essential facts are not in dispute.[4] On June 11, 1997, the New Bedford division of the Probate and

---

[2] The record before us does not contain the papers in that criminal case, but St. Germain does not dispute O'Gara's characterization of the reason for the dismissal of the criminal charges and we assume it is accurate.

[3] O'Gara's civil suit against St. Germain alleges (1) breach of contract, based on a marital separation agreement that survived the judgment of divorce in which the parties promised not to harass or molest each other, (2) abuse of process, (3) malicious prosecution, (4) intentional interference with business relations, and (5) intentional infliction of emotional distress all allegedly resulting from his unlawful arrest.

[4] The judge had before him St. Germain's affidavit, Officer Barker's written narrative, O'Gara's verified civil complaint and memoranda of law, and other papers filed by counsel. The judge did not rule on whether St. Germain met her initial, threshold burden under G. L. c. 231, § 59H. The proper resolution of a § 59H motion does not necessarily require judicial fact finding. Instead, as we explain in the text infra, if the moving party meets her threshold burden of demonstrating that the lawsuit against her is based solely on

Family Court issued a G. L. c. 209A abuse prevention order on behalf of St. Germain, directing O'Gara not to contact her except for "[n]otification of court proceedings -- by mail, or by sheriff or other authorized officer when required by statute or rule."[5] The c. 209A order contained the warning required by statute; namely, "VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE punishable by imprisonment or fine or both." See G. L. c. 209A, § 7.

Subsequent to St. Germain's order becoming permanent, O'Gara filed a number of unsuccessful motions to vacate the order. In each instance, the papers sent by O'Gara to St. Germain bore a stamp indicating that they had been filed first with the registrar's office of the Probate and Family Court. On March 28 and 29, 2014, St. Germain received letters at her parents' home in New Bedford, an address covered by the permanent restraining order. One of the envelopes contained a

---

her petitioning activity, as in this case, the party opposed to the motion must demonstrate that a reasonable person could not conclude that the moving party's conduct had a basis "in fact or law." At this second stage of the analysis by the judge, factual disputes are not necessarily resolved. Instead, on the basis of the evidence before the court, the judge must determine if there is any reasonable factual support or arguable basis in law for the moving party's petitioning activity. If the answer is yes, the motion must be allowed. Keegan v. Pellerin, 76 Mass. App. Ct. 186, 190 (2010).

[5] In February, 2001, the Probate and Family Court made the order a permanent order upon its finding that "anything less than permanent is unwarranted by the facts."

handwritten motion on a preprinted Probate and Family Court form, dated February 23, 2014, and signed by O'Gara, who at the time was self-represented, again asking the Probate and Family Court to vacate the permanent abuse prevention order and to turn over statements and hospital records filed by St. Germain in support of her request for a permanent restraining order. The motion form also included handwriting indicating that it was scheduled to be heard by the court sitting in Taunton on April 7, 2014. There was a second page in the envelope, which was a handwritten certificate of service signed by O'Gara, also on a preprinted Probate and Family Court form, dated March 28, 2014. Neither the motion nor the certificate bear a court stamp or court seal, or any indication that they had actually been filed in the Probate and Family Court. A copy of this pleading is part of the record on appeal.[6]

St. Germain did not simply assume that the papers mailed to her by O'Gara were not genuine documents in a court proceeding. Instead, on the following business day, St. Germain called the Probate and Family Court and spoke to an unidentified person. In her affidavit filed in support of her motion to dismiss, St. Germain stated that she was informed "by the clerk that there was no record whatsoever of the unstamped documents I had

---

[6] There was also a second envelope that contained a second motion to vacate a G. L. c. 258E harassment order that had been obtained by the parties' daughter against O'Gara.

received."  St. Germain next contacted the New Bedford police department and reported that O'Gara mailed "unstamped" documents to her and that she was "concerned" that he had "violated his restraining order."  Officer Randal Barker was assigned to the case and met with St. Germain at her parents' home.  Officer Barker inspected and obtained copies of the documents mailed to St. Germain by O'Gara.  Officer Barker conducted his own investigation.  In his written police narrative, he stated that he contacted the Probate and Family Court and learned that "the motions in question were not logged in the courts and do not exist."[7]  Officer Barker then made arrangements with another local police department to arrest the defendant for violating the permanent restraining order.  O'Gara was arrested without

---

[7] In his police report, Officer Barker stated that St. Germain told him that she was informed by the Probate and Family Court "that the motions did not exist and were falsified." O'Gara attaches significance to the differences between St. Germain's account of what she was told by someone at the Probate and Family Court, which is set forth in her affidavit, and the account of what she was told that is set forth in Officer Barker's police report.  The parties do not dispute that St. Germain and Officer Barker were told by someone at the Probate and Family Court, prior to O'Gara's arrest, that the motions he mailed to St. Germain had not been filed in court.  For the reasons we discuss in the text infra, whether St. Germain was informed that the papers mailed to her by O'Gara were falsified or not, is not material to the outcome of this case.

incident during the daytime at his place of business and brought to the New Bedford police department for booking.[8]

From the outset, O'Gara told the police that "he sent those letters to the victim by the authority of the court."  O'Gara was charged in the District Court with violating a c. 209A order.  The charges were later dismissed by a judge who determined that the evidence to support them was insufficient.  Following the dismissal of the criminal charges, O'Gara filed this lawsuit against St. Germain, seeking damages.  In turn, relying on § 59H, St. Germain filed a special motion to dismiss, asserting that O'Gara's claims were based solely on her legitimate petitioning activity, namely, her communications with the police reporting her belief that O'Gara violated the permanent abuse prevention order.

At the hearing on St. Germain's special motion to dismiss, additional facts emerged.  It appears that prior to mailing the documents to St. Germain, O'Gara telephoned a court service that provides lawyers and parties with available dates for the hearing of motions so that proper notice can be given to the

---

[8] "With the enactment of G. L. c. 209A, § 6(7), the Legislature expanded the authority of the police to make warrantless arrests for certain misdemeanors in the context of domestic abuse." Commonwealth v. Jacobsen, 419 Mass. 269, 272 (1995).  Violation of a permanent G. L. c. 209A no contact order is a misdemeanor in this Commonwealth punishable by a fine or a sentence served in the house of correction (or both).  See G. L. c. 209A, § 7 par. 5.  See also Richardson v. Boston, 53 Mass. App. Ct. 201, 203 & n.7 (2001).

other side, and learned that April 7, 2014, was an available date. Furthermore, it appears that O'Gara mailed the papers in question to the Probate and Family Court contemporaneously with mailing them to St. Germain, but the papers were misplaced by court personnel and not docketed by the registrar's office until after St. Germain and Officer Barker telephoned the court to verify that they existed and subsequent to O'Gara's arrest.

Discussion. 1. The legal framework governing the special motion to dismiss. General Laws c. 231, § 59H, provides a remedy for persons who find themselves targeted by a lawsuit based on their petitioning activity. See Duracraft Corp. v. Holmes Prods., Corp., 427 Mass. 156, 161 (1998) (Duracraft); Cardno Chemrisk, LLC v. Foytlin, 476 Mass. 479, 483-484 (2017) (Chemrisk).[9] The remedy provided by § 59H was designed to be inexpensive and quick, in the sense that the motion was designed to be heard before discovery is completed. See id. at 484. A § 59H special motion to dismiss must be filed within sixty days of service of the complaint. G. L. c. 231, § 59H fourth par. Upon a party's filing a § 59 special motion, the court "shall

_____

[9] In the preamble to 1994 House Doc. No. 1520, the Legislature left no doubt of its purpose, stating, in relevant part, that the "full participation by persons and organizations and robust discussion of issues before legislative, judicial and administrative bodies and in other public fora are essential to the democratic process [and] that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Duracraft, supra.

advance any such motion so that it may be heard and determined as expeditiously as possible." Section 59H first par. The result is that § 59H motions are to be decided at the very early stages of a case and on the basis of a documentary record comprised of the pleadings and any affidavits, "stating the facts upon which the liability or defense is based." Ibid.

a. Definition of petitioning. As the Supreme Judicial Court recently explained, § 59H's definition of petitioning is "very broad," Chemrisk, supra at 484, shielding those who exercise their constitutional right to seek redress from the government for wrongs done to them or grievances that they suffered as citizens from retaliatory civil lawsuits. See Kobrin v. Gastfriend, 443 Mass. 327, 332-333 (2005) (Kobrin).[10] The shield established by § 59H has been described as "similar in purpose to the protections afforded public officials by the

---

[10] Petitioning under G. L. c. 231, § 59H sixth par., means:

"[1] any written or oral statement made before or submitted to a legislative, executive or judicial body, or other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government."

doctrine of governmental immunity."  <u>Fabre</u> v. <u>Walton</u>, 436 Mass. 517, 523 (2002) (<u>Fabre</u>).

The right of petition extends to all branches and departments of the government, at any level, Federal or State. See <u>California Motor Transport Co</u>. v. <u>Trucking Unlimited</u>, 404 U.S. 508, 510 (1972).  Furthermore, § 59H covers petitioning activity regardless of whether it concerns a public or purely private matter.  See <u>McLarnon</u> v. <u>Jokisch</u>, 431 Mass. 343, 347 (2000) (<u>McLarnon</u>).

b.  <u>Legal standard</u>.  In <u>Chemrisk</u>, <u>supra</u> at 484-485, the court reviewed the two-stage framework and shifting burdens that come into play in ruling on a § 59H motion.  See <u>Duracraft</u> <u>supra</u> at 167-168; <u>Benoit</u> v. <u>Frederickson</u>, 454 Mass. 148, 153 (2009) (<u>Benoit</u>).

i.  <u>Movant's burden</u>.  First, the moving party, St. Germain, has the burden to demonstrate that the claims against her are "based on [her] petitioning activit[y] alone and have no substantial basis other than or in addition to the petitioning activit[y]."  <u>McLarnon</u> <u>supra</u> at 348, quoting from <u>Duracraft</u>, <u>supra</u>.  The statute is designed to protect expression "in which a party seeks some redress from the government."  <u>Kobrin</u>, <u>supra</u> at 333.  If the moving party fails to do so, the motion must be denied.  <u>Ibid</u>.

ii. Opposing party's burden. If, however, the movant, St. Germain, meets her threshold burden, the burden shifts to the opposing party, O'Gara, to show, by a preponderance of the evidence,[11] that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." Section 59H 1st par. If the opponent fails to make the requisite showing, the court "shall" allow the § 59H motion. Ibid.

2. Judge's ruling. In denying the § 59H motion, the judge did not follow the two-stage framework set forth in § 59H and determine whether St. Germain met her threshold burden to demonstrate that O'Gara's lawsuit was based exclusively on her petitioning activity. Instead, the judge reasoned that "[a]t this stage of discovery, and based on the sparse statements of facts, the court must conclude that the arrest, jailing and ultimately wrongful prosecution of [O'Gara] was based on a credible claim of injury caused by [St. Germain], and therefore not based entirely upon [St. Germain's] protected petitioning activity." We review the judge's ruling for an error of law or

---

[11] The preponderance of the evidence standard has been defined as the quantum of evidence that makes a certain proposition "appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there." Sargent v. Massachusetts Acc. Co., 307 Mass. 246, 250 (1940).

an abuse of discretion.  See Marabello v. Boston Bark Corp., 463 Mass. 394, 397 (2012).

3.  Application of the legal framework to the facts.  In ruling on a § 59H motion, the judge's role is not to decide whether the opponent's pleading -- i.e., the complaint, cross claim or counterclaim -- plausibly suggests an entitlement to relief so as to withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).[12]  Rather, the judge's focus must be solely on "the conduct complained of, and, if the only conduct complained of is petitioning activity, then there can be no other 'substantial basis' for the claim." Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002) (Lopez), quoting from Fabre, 436 Mass. at 524.

a.  Stage one.  The first question that must be addressed is whether St. Germain engaged exclusively in petitioning activity.  In this case, neither party requested further discovery on the anti-SLAPP motion.  See Keegan v. Pellerin, 76 Mass. App. Ct.186, 190 (2010) (Keegan).  While we agree with the judge that St. Germain's § 59H motion was filed at a very early stage in the case and the factual record is limited, we do not agree that further discovery was necessary before a ruling could be made on the motion.  The anti-SLAPP statute was designed to

_____

[12] See Iannacchino v. Ford Motor Co., 451 Mass. 623, 635 (2008).

provide a prompt and inexpensive remedy in all cases in which it is properly invoked. Duracraft, 427 at 161.

When a person reports suspected criminal activity to the police, she is engaging in constitutionally-based petitioning activity for purposes of G. L. c. 231, § 59H. See Keegan, supra (alerting police of suspected crime is conduct that is "firmly protected" by § 59H).[13] See also Wenger v. Aceto, 451 Mass. 1, 5-6 (2008) (Wenger) (filing criminal complaint is protected petitioning activity); Benoit, 454 Mass. at 153 (report of rape to police is petitioning activity); McLarnon, 431 Mass. at 347 (request made of court to issue c. 209A protection order is exercise of petition right); Fabre, 436 Mass. at 523 (same).[14] The question is not whether St. Germain was motivated by hostility toward O'Gara. An inquiry into the moving party's state of mind or motive is not a part of § 59H's threshold

---

[13] Here, as in Keegan, supra, O'Gara does not allege that St. Germain spoke about the matter to anyone other than police. Contrast Burley v. Comets Community Youth Center, Inc., 75 Mass. App. Ct. 818, 821-824 (2009).

[14] This is the predominant view throughout the United States. See, e.g., Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000) (submission of complaint and criticisms to police department is protected petitioning activity under First Amendment); United States v. Hylton, 558 F.Supp. 872, 874 (S.D. Tex 1982) (same); Estate of Morris v. Dapolito, 297 F.Supp.2d 680, 692 (S.D. N.Y. 2004) (verified criminal complaint is petitioning under First Amendment); Curry v. State, 811 So. 2d 736, 743 (Fla. Dist. Ct. App. 2000) (same); Arim v. General Motors Corp., 200 Mich. App. 178, 191 (Mich. App. 1994) (assistance and cooperation with law enforcement operation was protected petitioning under First Amendment).

inquiry.  See Lopez, supra at 122 ("motive behind the petitioning activity is irrelevant at this initial stage"); Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 590 n.6 (2014) (Hanover); Polay v. McMahon, 468 Mass. 379, 386 (2014).[15]  It suffices to say that "[w]e care not whether a [party] seeking dismissal under the anti-SLAPP statute is 'sincere' in his or her statements; rather, our only concern, as required by the statute, is that the [moving party] be truly 'petitioning' the government in the constitutional sense." Kobrin, 443 Mass. at 338 n.14.[16]  Furthermore, an examination of O'Gara's civil lawsuit reveals that, despite the fact that he alleged multiple causes of action and harm to him personally and

---

[15] This is consistent with United States Supreme Court precedent.  In Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 139 (1961), the Court observed that "[t]he right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so."

[16] A person does not have a right, however, to make a false report to a police officer.  General Laws c. 269, § 13A, makes it a crime to "intentionally and knowingly make[ ] or cause[ ] to be made a false report of a crime to police officers."  In order to be prosecuted under § 13A, "the defendant has to have made a substantially inaccurate accounting of a crime, not just have reported some untrue detail related to it."  Commonwealth v. Fortuna, 80 Mass. App. Ct. 45, 52 (2011).  To convict a person under § 13A, the Commonwealth must prove that the person knew the report she was making was false.  Commonwealth v. Salyer, 84 Mass. App. Ct. 346, 353 (2013).  We express no opinion on the analysis that would apply to a special motion to dismiss under § 59H in response to a civil lawsuit alleging that the defendant made a knowingly false report to the police.

professionally, his allegations all stem from St. Germain's petitioning activity.

b. _Stage two_. Because St. Germain met her initial threshold burden, the judge should have moved on to stage two of the § 59H framework and determined whether O'Gara met his burden to establish by a preponderance of the evidence that "no reasonable person could conclude" that St. Germain's report to the police was supported either in fact or in law. North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 865-866 (2009).

O'Gara does not deny that St. Germain and Officer Barker made telephone inquiries to the Probate and Family Court and were told by someone that there was no record of O'Gara's motion on file. In an effort to meet his responsive burden of proof at the second stage of the inquiry required by § 59H, O'Gara maintains that St. Germain's report to the police was false, because no one at the Probate and Family Court told her that the papers mailed by O'Gara were falsified, and because the permanent abuse prevention order did not expressly require that notifications of court proceedings mailed to St. Germain must contain the court stamp indicating that they first had been filed with the registrar's office.

The core of O'Gara's argument in opposition to St. Germain's § 59H motion was that as a result of her "falsely and

maliciously" reporting to the police that O'Gara violated the abuse prevention order, he was arrested without probable cause. He alleged that this caused damage to him personally and to his business interests because he was arrested at work. He also alleged that St. Germain was motivated by a desire to cause him injury. Such an inference could be drawn (in his view) from the content of St. Germain's statements, which he alleged were "calculated to inflict criminal liability." In short, O'Gara maintains that this was an instance of "sham" petitioning, insofar as St. Germain informed the police of a violation of c. 209A when allegedly "she knew from the express provisions of the [o]rder itself that there was no violation."[17]

This argument fails to meet its mark for several reasons. In terms of whether St. Germain had a reasonable basis in law for her petitioning activity, the question is not whether the permanent restraining order required O'Gara to have his motions stamped as received by the registrar's office of the Probate and Family Court before putting them in the mail to St. Germain. It

---

[17] O'Gara complains that St. Germain wrongfully (a) suggested to Officer Barker that "the absence of a [c]ourt stamp on the [two motions mailed to her] was a violation of the [p]ermanent [o]rder when there was no such legal requirement," (b) "misrepresent[ed] to the officer that [O'Gara's] motion was 'falsified'" even though that was not the case; and (c) bolstered her police statement by falsely representing that "a nonpetitioning third party's anti[h]arassment [o]rder had been violated" by him.

did not.[18]  However, as long as a reasonable person could conclude there was a legal basis for the petitioning activity, the party opposing the motion to dismiss has failed to meet his legal burden to demonstrate that the petitioning activity lacked any basis in law.  See Wenger, 451 Mass. at 7.  See also Baker v. Parsons, 453 Mass. 543, 555 n. 20 (2001).  Here, St. Germaine was wholly within her rights to protect herself by questioning

_____

[18] The chain of events we describe exposes a risk for those who are bound by a restraining order that includes a no contact provision, and who attempt to serve the protected party with process in the case by mailing.  As we noted earlier in the text, unless a judge orders otherwise, G. L. c. 209A permits a party who is not permitted to contact the protected party to serve the protected party with a motion in the case by mail.  There is no express requirement in such a case that the party making service first file his pleading with the court and then, and only then, mail a stamped or endorsed copy of the pleading to the protected party.  What is currently required, as printed on the standard form used for G. L. c. 209A orders, is that the mailing to the protected party must be a notice of a court proceeding.  This certainly suggests that the party making service of a pleading must first contact the court which issued the protective order before mailing anything to the protected party.  However, as the facts in this case illustrate, obtaining a date from the court for a hearing on a motion and then mailing the motion papers to the protected party and mailing or delivering them to the court may not ensure that the protected party and the police will be aware that a court proceeding is pending and that the mailing is not in violation of the no contact provision of the protective order.  Since this issue could arise in any department that issues protective orders, the Chief Justice of the Trial Court may wish to consider whether a procedure should be established to ensure that a protected party and the police can differentiate between a mailing that is a genuine notice of a court proceeding and one that is not.

It should be noted that, after the events that are the subject of this appeal, the court ordered O'Gara to obtain court approval before serving any motions or pleadings on St. Germain.

whether the papers O'Gara sent, which did not contain a court stamp,[19] were authentic notices of "court proceedings" as that phrase appears in the text of the permanent restraining order. Thus, whether St. Germain was informed by court personnel that the documents mailed to her had been falsified, is beside the point.

Even if we assume, as O'Gara alleges in his complaint, that St. Germain was not told that the papers O'Gara mailed to her were falsified, the independent investigation conducted by Officer Barker, who did contact the Probate and Family Court, makes clear that there was a factual basis for St. Germain's belief that O'Gara violated the permanent restraining order by mailing her documents other than those that are a notification of court proceedings. Officer Barker also was informed that the papers mailed to St. Germain "were not logged in the courts and do not exist." As O'Gara's counsel rightly conceded at argument, what the police learned from the Probate and Family Court "more or less" confirmed what St. Germain supposedly told the police. The fact that the parties and the police later discovered that O'Gara's motion had been misplaced and had not

---

[19] St. Germain's allegation that the lack of a court-stamp was a break from O'Gara's past practice only heightens her question but it is not a requirement.

been docketed at the time Officer Barker called the Probate and Family Court, again, is beside the point.[20]

Conclusion. The evidence in the record before us indicates that St. Germain had a legitimate basis for her concern that the protective order had been violated, and a right to ask the police for assistance. The police response, in turn, was prompt, and deliberate.[21] Because O'Gara's lawsuit was based entirely on St. Germain's petitioning activity, her [s]pecial [m]otion to dismiss under G. L. c. 231, § 59H, should have been allowed. Therefore, the order denying the [s]pecial [m]otion to dismiss is reversed , and the case is remanded for the entry of a new order dismissing O'Gara's complaint, which shall include an award of reasonable attorney's fees and costs pursuant to

---

[20] For these reasons, even though the judge did not undertake the two-stage analysis required by § 59H, we believe this case is like Chemrisk, in that "only one conclusion is possible on this record." Chemrisk, 476 Mass. at 489 n.15.

[21] The parties in this case both refer to G. L. c. 209A, § 6(7), which provides, in part, that a police officer "shall . . . arrest any person a law officer witnesses or has probable cause to believe has violated a temporary or permanent vacate, restraining, or no-contact order." It is sufficient for us to note that probable cause has been defined as "a relatively low threshold 'requiring only sufficiently trustworthy information to instill in a reasonable person the requisite belief of criminality.'" Young v. Boston University, 64 Mass. App. Ct. 586, 589 (2005), quoting from Richardson v. Boston, 53 Mass. App. Ct. 201, 206 (2001). See Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992).

G. L. c. 231, § 59H.[22]  In her brief on appeal, St. Germain requests an award of appellate attorney's fees and costs.  She is entitled to such an award pursuant to § 59H.  See McLarnon, 431 Mass. at 343, 350; Benoit, 454 Mass. at 154.  Within fourteen days of issuance of the rescript in this matter, St. Germain may file with the clerk of the Appeals Court, for the consideration of the panel who decided this appeal, appropriate written documentation supporting her request for an award of appellate attorney's fees and costs, as discussed in Fabre, 441 Mass. at 10-11.  O'Gara, in turn, may file a written opposition to that request within fourteen days thereafter.

So ordered.

---

[22] See MacDonald v. Paton, 57 Mass. App. Ct. 290, 296 (2003) ("[O]nce a court grants a special motion to dismiss," under G. L. c. 231, § 59H, "the moving party is awarded costs and reasonable attorney's fees").